## N. Y. COMMON PLEAS.

### ISRAEL RANDOLPH agt. THE MAYOR, &c., OF NEW YORK.

*Contract to build sewers — right of city to retain money as a penalty for failure to complete within time specified — Answer — Counter-claim.*

In a contract with the city for the building of sewers, it was provided that the contractors should satisfy all liens for work or materials, filed with the commissioner of public works (the contracting department), before or within ten days after the completion of the work, otherwise the city should be entitled to retain or deduct such sum from the contract-price. The only notice of lien filed was left with the finance department, some six months after the work was completed:

*Held,* that the lien not having been filed in the proper department within the proper time, the city had no right to deduct or retain the amount of the same.

The contractors were required, by the terms of the contract, to complete the work within ninety days after the day the commissioner should designate for commencing it, and in case of default the city was entitled to deduct from the contract-price the sum paid for inspectors' wages for each and every day the aggregate time of all the inspectors on the work appointed by the commissioner might exceed the stipulated time for its completion. The contract provided that the contractors should commence the work on such day as the commissioner should designate. No notice or designation of a day for the commencement of the work was ever given to the contractor by the commissioner, but the contractors, after applying to the commissioner for such designation and receiving no orders, began the work at their own risk on June 8, 1871:

*Held,* that the date for fixing the period of time from which the ninety days were to be computed was the day of the actual commencement of the work. The mere placing of an inspector at some particular point of the street where the work was to be performed, was not the notice intended by the provision of the contract.

Where a plaintiff does not reply to an answer setting up counter-claims, it is an admission that they were due and owing by plaintiff, and the defendant may avail himself of such admission.

But the defendant waives this advantage if he goes into proof of the
counter-claim, and by such proof shows that it could not properly have
been set off against plaintiff's demand.

*General Term, November,* 1874.

THE plaintiff, as assignee, brought this action to recover
from the defendants the balance due on a contract to build
certain sewers in the city of New York executed by his
assignors, Messrs. Allen and Henry, and the defendants.
The contract and the right to receive the money due and to
grow due thereunder was assigned by the contractors to the
plaintiff October 2, 1871, and the commissioner of public
works, on notice, approved and allowed such assignment.
The defendants, by their answer, admit that something is due
the plaintiff, but refuse to pay the sum claimed by him
because: First. The contractors did not complete the work
within the limit of ninety days, the time fixed by the contract,
and the city had paid to inspectors for inspecting the work,
after the expiration of the ninety days, the sum of $1,288.
Second. That they were entitled to retain until June 9th,
1872, the sum of $435.60 as security for the relaying of pave-
ment. Third. That the contractors owed the city for sewer
pipes, sold them by the department of public works, the sum
of $1,351.70. Fourth. That certain material-men had filed
liens against the contractors in the sum of $335. The plain-
tiffs claimed the right to recover $5,498.72. The defendants
claimed the right to retain these several sums, amounting to
$3,410.36, leaving admitted a balance due of $2,088.42. On
the trial it appeared that there was no pavement laid in the
street and the defendants withdrew their claim to the sum of
$435.60 as security for relaying the pavement. The plaintiff
admitted the right of the defendants to retain $1,351.70, the
price of sewer pipes furnished by the department of public
works. The case was thus narrowed down to the question
whether the defendants had a right to retain $1,288 for
"excess of inspection" and $335 claimed to be covered by

liens filed. The referee found that the city had not the right to retain the money, and reported that the sum of $4,807.31 was due plaintiff, and the defendants appeal.

*Elliot Sandford,* for respondent.

I. As to the right to retain $335. The contract required the contractors to satisfy all liens for work or materials filed with the commissioner of public works, the contracting department, before or within ten days after the completion of their work. In this case no notice of lien was shown to have been filed with the contracting department, the department of public works. The only notice of lien filed was left with the comptroller in the finance department, and that was filed six months after the work was completed. The liens not having been filed in the proper department within the proper time, the defendants have no right to retain the sum of $335. This claim did not exist against the assignors at the time when the assignment to the plaintiff was made, October 2, 1871, and cannot now be made the subject of a counter-claim against the plaintiff on the record (*Code, sec.* 150; *Martin agt. Kunsmuller,* 37 *N. Y.,* 396).

II. As to the right claimed by the defendants to retain $1,288 alleged to have been paid by them to certain inspectors. The proposals for contracts contained a notice that bidders are specially notified that the commissioner of public works reserves the right to determine the place and time for commencing the work. And the contract contained a provision that the work should be prosecuted at such time as the commissioner should direct; also that the contractors should commence the work on such day as the said commissioner should designate, and should complete the same on or before the expiration of ninety days, next thereafter. The evidence of both contractors was presented on the trial that the commissioner never gave them any notice fixing the day on which work should be commenced, although application was twice made in writing therefor. They never had any notice from

any one, and work was actually commenced without notice. The contract contained also a clause by which the contractors agreed that the defendants might retain, as a penalty for the non-completion of the work within the stipulated time, the sum paid for inspectors' wages at the rate of four dollars per day. No time to begin the work ever having been fixed by the commissioner of public works, the stipulated time never began to run, and the contractors were *quasi* trespassers until their work was accepted by the city. The right to retain money as a penalty should be clear and strictly construed and beyond a doubt. When one who contracts to have work done for him omits to do something on his part 'which is essential before the work can be begun, and by which the other party is delayed, the strict condition in respect to time is waived (*Green* agt. *Haines*, 1 *Hilton*, 254; *Fleming* agt. *Gilbert*, 3 *Johns.*, 531; *Shute* agt. *Hamilton*, 3 *Daly*, 466; *Holmes* agt. *Groff*, 3 *M. & W.*, 380). The contractors were also delayed by the failure on the part of the defendants to pay ten per cent on the value of such work done, in monthly installments, due under the contract. The first payment was not made till June, 1872, although due and demanded in September, 1871. The defendants claim that the commissioner of public works had the right to appoint, and appointed, three inspectors, and that their appointments, of which no notice was given to the contractors, was a designation of the time when the work should be commenced by them. In fact the contract bears date May 23, 1871, and two inspectors were appointed by Wm. M. Tweed, then commissioner, on that very day, and a third six days later. And while the contractors were seeking permission to commence their work inspectors were already on the street earning each his four dollars per day. This was not an unfrequent thing in those days, and most contractors suffered it without resistance. Thus the alleged right to retain money paid for excess of inspection arose. There was no proof presented before the referee that the defendants had paid, or were liable to pay,

$1,288 as inspectors' wages. A bill for services was offered in evidence, with an affidavit annexed, dated November, 1871, and exception was taken to this as not the best evidence. This was the only proof presented on this point. It was shown that these inspectors were not present every day on the work, and that Mr. Van Nort, commissioner of public works, when the sewer was completed and accepted by the city, was informed that payment to the inspectors should be disallowed.

III. After all the testimony had been taken the defendants' attorney requested the referee to hold that the second, third, fourth and fifth paragraphs of the answer contained new matter constituting counter-claims, and that as no reply had been made these counter-claims had been admitted. This the referee refused. The answer did not expressly state that the facts were set up by way of counter-claim, and unless this is done they will be deemed to be defenses and not counter-claims (*Burrall* agt. *De Groot*, 5 *Duer*, 382). The defendants' answer merely alleges matter which, if true, shows that the plaintiff never had a cause of action against them to the amount claimed in the complaint, and it contains no demand for affirmative relief (2 *How.*, 310). No reply was necessary in this case (22 *How.*, 290; 8 *id.*, 122; *id.*, 146). When the plaintiff does not reply and may be deemed to admit a counter-claim the defendant waives this advantage if he goes into proof of the counter-claim, and by such proof shows that it could not properly have been set off against plaintiff's demand (*Campbell* agt. *Genet*, 2 *Hilt.*, 295). The alleged counter-claim must be one existing in favor of a defendant against the plaintiff on the record (*Code*, *sec.* 150; *Gleason* agt. *Moen*, 2 *Duer*, 639; *Vassaer* agt. *Livingston*, 13 *N. Y.*, 248; *Caryl* agt. *Williams*, 7 *Lans.*, 418).

IV. At the time the assignment was made to the plaintiff, October 22, 1871, these alleged counter-claims did not exist, and until a demand becomes mature it may be defeated by the assignment of the claim (*Watt* agt. *The Mayor*, 1 *Sand-*

*ford*, 23 ; *Myers* agt. *Davis*, 22 *N. Y.*, 489). The report of the referee is presumptively correct. It is assumed to be right and to be founded upon proof, and will not be disturbed, except when clearly against evidence (27 *How.*, 1 ; 2 *Sweeny*, 605 ; 35 *Barb.*, 602 ; 44 *N. Y.*, 601). The judgment below should be affirmed.

*E. Delafield Smith*, for appellants.

I. Paragraphs 2 and 5 of defendants' answer were counter-claims within the meaning of the Code, and no reply having been interposed by the plaintiff they should have been taken as true. (*a.*) No particular form of words is necessary to make a pleading a counter-claim. It is sufficient if the defendant intimates, in reasonable language, that he intends to make a personal claim in his own favor against the plaintiff (*Bates* agt. *Rosekrans*, 37 *N. Y.*, 409). (*b.*) The counter-claim of the Code includes both set-off and recoupment, and is broader and more comprehensive than either (*Vassear* agt. *Livingston*, 13 *N. Y.*, 248 ; *Clinton* agt. *Eddy*, 1 *Lans.*, 61 ; *Xenia Bank* agt. *Lee*, 2 *Bosw.*, 694 ; *Leavenwork* agt. *Packer*, 52 *Barb.*, 132 ; *Pattison* agt. *Richards*, 22 *Barb.*, 143 ; *Lemon* agt. *Trull*, 16 *How.*, 576). (*c.*) This is a case of recoupment (*Nichols* agt. *Dusenbury*, 2 *N. Y.*, 286 ; *Batterman* agt. *Pierce*, 3 *Hill*, 171 ; *McAllister* agt. *Reab.*, 4 *Wend.*, 483 ; *Still* agt. *Hall*, 20 *id.*, 51 ; *Ives et al.* agt. *Van Epps et al.*, 22 *Wend.*, 155, *opinion by* COWEN, *J.*). (*d.*) This claim existed, at the time this action was commenced, in favor of the defendants and against the plaintiff. The contract authorizes the parties of the first part to deduct from the moneys to grow due thereunder any excess of inspection paid by them. Paragraph 2 of the answer not only states that $1,288 was paid to inspectors, but it alleges that defendants are entitled to deduct and retain this amount from the $5,498.72, for which the plaintiff brings his action. In other words defendants seek to recoup this amount. The allegations in the fifth paragraph of the answer are similar in form.

II. The referee erred in finding as a conclusion of law that the plaintiff is entitled to recover $4,147, with interest from the 9th day of December, 1871. (*a*.) The contract provides for the building of three sewers. It further provides that the commissioner of public works reserves the right to determine the time and places for commencing and prosecuting the work. Another provision authorizes the commissioner to determine the number of inspectors to be placed upon the work, and goes on to say that "the *aggregate time* of all the inspectors so employed, will be the time with which the time stipulated for the completion of the work under this agreement will be compared. The inspectors will be paid each at the rate of four dollars a day." Plaintiff or his assignors were allowed ninety days in which to complete the work. Ten days were subsequently allowed for extra work, making in all 100 days. There was an excess of 322 days. By the terms of the contract the commissioner was authorized to deduct and retain out of the moneys to grow due on the contract the sum paid for inspectors' wages for each and every day the aggregate time of all the inspectors employed upon said work might exceed the said stipulated time for its completion. See, also, the same provisions. (*b*.) Mr. Towle, defendants' engineer, in charge of the department of sewers, testifies as follows: First. That three inspectors were placed on the work, one for each separate sewer. Two were placed on the work on the day, or about the day, of the execution of contract, and the third a few days afterwards. Second. The commissioner of public works designated generally that the work should begin on signing of contract, and as soon thereafter as inspectors were appointed. The days upon which inspectors were placed upon the different sections of this work were, respectively, the days designated by the commissioner for the contractor to begin work. Third. The time of inspectors on the sewers in question, as shown by the records of the department of public works, exceed the time stipulated for by the contract, 322 days. Fourth. The commissioner

of public works bases his knowledge of the number of days charged for by inspectors upon the sworn statements of each inspector, monthly, of the number of days he is at work. Fifth. The inspectors' bills show an excess of inspection of 322 days.

III. The exception to the referee's ruling on the admission of the question at folio 72 was well taken. Question. "Is it customary, in jobs of this nature, to give contractors any further notice to commence work than is given by placing the inspectors on the work?" (*a.*) It was competent to show by the witness, Mr. Towle, the general custom in the department (*Wadsworth* agt. *Alcott*, 6 *N. Y.*, 72, *opinion*, PAIGE, *J.*; *Hinton* agt. *Locke*, 5 *Hill*, 437, *opinion*, BRONSON, *J.*; *Goodrich* agt. *Ogden*, 4 *id.*, 104; *Dawson* agt. *Kettle*, *id.*, 167; *Smith* agt. *Wilson*, 3 *Barn. & Adol.*, 728; *Cooper* agt. *Kane*, 19 *Wend.*, 384; *Sewall* agt. *Gibbs*, 1 *Hall*, 602; *Whitnel* agt. *Gratham*, 6 *T. R.*, 398). In this case Lord KENYON says: "Evidence of usage is admissible to expound a private deed as well as the king's charter." (*Rushforth* agt. *Hadfield et al.*, 6 *East*, 519; *Kirkman* agt. *Shawcross*, 6 *T. R.*, 14; *Phillips on Evidence*, vol. 2, pp. 336 to 350). (*b.*) The contract provides as follows: "The said parties of the first part hereby further agree that they will commence the aforesaid work on such day as said commissioner may designate." * * * If, then, the placing of inspectors on the work was the usual mode of designating when it should begin, the referee should have allowed the question. (*c.*) The contractors actually commenced the work without any written or verbal instructions from the commissioner. The judgment should be reversed.

J. F. DALY, *J.*—The defendants' counter-claim for sewer pipe furnished plaintiff in the construction of the sewer was admitted and allowed on the trial and deducted from plaintiff's claim and judgment given for the balance. Two other counter-claims, one for liens filed by persons furnishing mate-

rials to the contractors, and one for the moneys retained as security for repairing, were not allowed by the referee, for the reason, it is presumed, that they were not proven. No reply was ever served by plaintiff to the defendant's answer setting up those counter-claims. This was an admission that they were due and owing by plaintiff, and defendants might have availed themselves of such admission; they did not, but offered on the trial proof in support of each item of set-off or recoupment. If they failed to support their claims by the proof offered they lose the benefit of the admission (*Campbell* agt. *Genet*, 2 *Hill*, 295).

The rule laid down in that case is a reasonable one. If defendants intend to rely upon the admission made by the failure to serve a reply, they should rest upon it at the trial, and plaintiff having notice of their intention may then apply to the court for leave to serve a reply, which leave the court has power to grant. But if they waive the admission and go into proof of their counter-claim, it seems only just to give such judgment as the proof may warrant. A perusal of the case satisfies me that the referee did not err in rejecting those two counter-claims.

I. The contract with the city provided, that the contractors were to furnish the commissioners of public works with satisfactory evidence, that all persons who give said commissioners before or within ten days after the completion of the work written notice, that a balance for work or material or compensation for injury or damage is due and unpaid, have been fully paid or secured therefor.

There is no proof whatever that the alleged claimants, Calwell and Hogan, ever gave such notice to the commissioner, but on the contrary, the proof shows that such notices of lien were filed with the finance department, and not filed there until some months after the completion of the contract.

II. There is no proof that the city was compelled to repair the pavement of the street, nor that they had any right to retain beyond June 9, 1872, the time specified in the con-

tract, the sum of $435.60, which they kept back pursuant to its terms as security for the proper relaying of the pavement.

The referee erred, however, in rejecting the other counter-claim of defendants, viz., moneys paid out for inspectors' fees, the contractors having failed to complete the work within the time specified in the contract. I do not consider that defendants are entitled to the full amount claimed by them, because I am of opinion that no charge should be made for inspectors' pay before the date of the actual commencement of the work. The contractors were required by the terms of the contract to complete the work within ninety days after the day the commissioner of public works should designate for commencing it, and in case of default the city was to deduct from the contract price the sum paid for inspectors' wages, for each and every day the aggregate time of all the inspectors on the work appointed by the commissioner of public works might exceed the stipulated time for its completion. No notice was ever given to the contractors by the commissioner to commence the work, and no day was designated by him for that purpose. The contractors applied to the commissioner for such designation, but received no orders. They began the work at their own risk, on June 8, 1871, sixteen days after the contract was signed. They completed it in 174 days, which, deducting Sundays and holidays, and ten days extra time, all of which were allowed them, made about 137 days altogether, or forty-seven days beyond the time fixed by the contract. As no time was designated by the commissioner for commencing the work, there can be no other data for fixing the period of time from which the ninety days were to be computed, except the day of the actual commencement of the work, but an effort was made by defendants to show a designation of an earlier date.

A witness for defendants, Stevenson Fowler, testified that he was engineer in charge of the sewer department of the public works; that an inspector was appointed by an

Randolph agt. Mayor, &c., of New York.

appointment in writing, filed in the department of public works, and was placed on the work the same day that the contract was executed, and that that was the designation by the commissioner of public works of the time of commencement of the work and that there was no other designation except that. He was asked if it were customary, in jobs of this nature, to give contractors any further notice to commence work than by placing inspectors on the work. This was objected to by plaintiffs and ruled out by the referee, to which defendants excepted. I do not think the question was proper. The contract dated May 23, 1871, provided that the contractors should commence the work on such day as the commissioner should designate; that it was to be prosecuted at such times, and in such parts of the street on the line of the work, and with such force as the commissioner might from time to time during the progress of the work determine, at each of which points an inspector would be placed to supervise the same; that the aggregate time of all the inspectors so employed, would be the time with which the time stipulated for the completion of the work would be compared. These provisions indicate clearly that the day for the commencement of the work is to be fixed by some notice to the contractor, other than the placing of an inspector at some particular point of the street where the work is to be performed. An inspector of the work can hardly be said to be placed on the work until the work is commenced or a time is designated for its commencement. If the only notice to the contractors is to be the placing of an inspector on the street, it involves the necessity of a daily patrol of the locality by the contractor to ascertain whether an inspector is placed there. By what external marks and signs an inspector is to be recognized among the other citizens who appear on the streets, by the contractors, we are not informed. It is not shown that the contractors knew the inspector or how he was to be identified, when he appeared at the place of work. The work itself was to be

commenced in sections at any point the commissioner might designate, and consisted in building three sewers in One Hundred and Ninth street and Fourth avenue, and between First and Third avenues, emptying into the First avenue sewer; and between Third and Lexington avenue, emptying into the Third avenue sewer; and one between Lexington and Fourth avenue sewer, emptying into Fourth avenue sewer. The extent of street in a straight line in which these sewers were to be laid was about half a mile, at any point at which the work was to be begun, as directed by the commissioner. A custom or usage of the department to designate the point at which, and the day on which the work was to begin, by placing an inspector at each point, amounts in effect to no notice at all, and proof of such custom without offering to show that the contractor knew the inspector, or that it was customary to file in the department of public works a designation of the point at which the work was to begin, and that the contractors had knowledge of the custom, would be insufficient to charge the contractors in the face of the express provisions of the contract, which plainly indicate a specific designation to be made by the commissioner, and as plainly indicate that the inspector is to be placed on the work after such designation is made, and not as the notice or designation itself. But even excluding the time between the date of the contract and the actual commencement of the work, the contractors exceeded the ninety days allowed by the contract. The contractors waived a designation by the commissioner of public works, and commenced the work on June the eighth. But this did not relieve them from the obligation to complete the work within the time specified in the contract, any more than it relieved them from the performance of their other obligations. The judgment should be reversed and a new trial should be granted, with costs to abide events.

On the second trial the jury found in favor of the plaintiff for the full amount claimed, and no appeal therefrom was taken.